**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TENNESSEE**
**WESTERN DIVISION**

| | | |
|---|---|---|
| AGQUEST FINANCIAL SERVICES, INC., *a Minnesota Corporation*, | ) | |
| Plaintiff, | ) | |
| v. | ) | No. 2:26-cv-03073-SHL-cgc |
| JEFFREY WAYNE DANIELS, | ) | |
| Defendant. | ) | |

**ORDER DENYING TEMPORARY RESTRAINING ORDER AND DIRECTING RESPONSE**

Before the Court is Plaintiff AgQuest Financial Services, Inc.'s Motion for Temporary Restraining Order and Preliminary Injunction, filed September 23, 2026. (ECF No. 11.) AgQuest seeks entry of a Temporary Restraining Order requiring its debtor, Defendant Jeffrey Daniels, to "disclose where crops will be sold, sell [crops] only through disclosed locations absent AgQuest's consent, and require the proceeds [from the crops] to be jointly payable so the collateral is preserved while the parties' rights are litigated." (ECF No. 11-1 at PageID 93–94.) Daniels responded to the motion on September 28, 2026. (ECF No.14.) AgQuest filed a Motion for Leave to File Reply on September 29, 2026.[1] (ECF No. 15.)

For the reasons stated below, AgQuest's Motion for Temporary Restraining Order is **DENIED**. Additionally, Plaintiff is **DIRECTED** to indicate whether it seeks a Preliminary Injunction by close of business on October 7, 2026.

[1] AgQuest's Motion for Leave to File Reply is **GRANTED** and the reply it attached to the motion is considered in the analysis below.

## BACKGROUND

AgQuest provides loans to farmers. (ECF No. 11-1 at PageID 94.) During the 2025 crop season, AgQuest provided two loans to Daniels. (Id.) For each loan, Daniels entered into an agreement granting AgQuest a security interest in specific collateral, namely, his crops and all products and proceeds from his crops.[2] Daniels also agreed to other conditions on the sale of collateral.[3]

The loans matured on January 15, 2026, and Daniels defaulted. (Id.) After some back and forth between the Parties, AgQuest sued Daniels here for breach of contract and judicial recovery of collateral. (ECF No. 1.) Daniels's response to the Complaint is due October 2, 2026. (See ECF No. 9; ECF No. 10.) AgQuest brings the instant motion and asks for several conditions to be placed on Daniels and his crops during the 2026 fall harvest.

---

[2] The agreement defines "collateral" as "[a]ll crops growing, grown or to be grown or standing on or cut or harvested from or to be harvested from any real property wherever located and harvested or to be harvested in each crop year, including all products and proceeds of such crops." (ECF No. 1-3 at PageID 24; ECF No. 1-5 at PageID 60.)

[3] Specifically, the agreement provides that

> If required by AgQuest, [Daniels] shall disclose to AgQuest the names, identities, addresses and telephone numbers (as well as any other information required by AgQuest) of all buyers, commission merchants or selling agents ("Buyer List") to whom [Daniels] will sell its crops, as well as any other Collateral covered by this Agreement. [Daniels] agrees to update or supplement the Buyer List from time to time as required by AgQuest. [Daniels] agrees not to sell its crops or any Collateral to any buyer, commission merchant or selling agent not listed or disclosed on the Buyer List. [Daniels] must give AgQuest fifteen (15) days' advanced written notice prior to selling any crops or other Collateral to a buyer, commission merchant or selling agent not identified on the Buyer List . . . . AgQuest is authorized to directly notify any third parties of its security interest in the Collateral.

[ECF No. 1-3 at PageID 25; ECF No. 1-5 at PageID 61.)

## LEGAL STANDARD

A temporary restraining order is "an extraordinary remedy limited to preserving the status quo until a hearing can be held." Am. Clothing Express, Inc. v. Cloudfare, Inc., No. 2:20-cv-2007, 2022 WL 1523198, at *1 (W.D. Tenn. May 13, 2022) (citation omitted). "The standard for determining whether to grant a temporary restraining order is the same as the standard for determining whether to grant a preliminary injunction." Harris v. Hutson, No. 2:21-cv-02717-MSN-tmp, 2021 WL 6050931, at *1 (W.D. Tenn. Dec. 21, 2021) (citation omitted). Four familiar factors guide the analysis: "(1) whether the movant has a strong likelihood of success on the merits, (2) whether the movant would suffer irreparable injury absent a stay, (3) whether granting the stay would cause substantial harm to others, and (4) whether the public interest would be served by granting the stay." Hanover Am. Ins. Co. v. Tattooed Millionaire Ent., LLC, No. 16-cv-2817-JPM-tmp, 2016 WL 9307506, at *1 (W.D. Tenn. Nov. 22, 2016). The burden is on the moving party to make a clear showing that he is entitled to a temporary restraining order. See id.; Ali v. Townsend, No. 2:25-cv-03181-BCL-cgc, 2026 WL 1229070, at *2 (W.D. Tenn. May 5, 2026) (citation omitted).

The first two factors are critical to the temporary restraining order analysis. Cf. Whobrey v. Tenet Healthcare Corp., No. 2:26-cv-02946-SHL-tmp, 2026 WL 2676559, at *6 (W.D. Tenn. Sep. 11, 2026). If the movant is unlikely to succeed on the merits, "there is little reason for a court to take the drastic step of enjoining the opposing party at the onset of a suit." Id. (citation omitted). Additionally, without a showing of irreparable harm, "there is 'no need to grant relief now as opposed to at the end of the lawsuit.'" Id. (citation omitted).

## ANALYSIS

AgQuest seeks entry of an order requiring Daniels to comply with two parts of the parties' loan agreement, that is: (1) to disclose all locations where his 2026 crops have been or will be sold or delivered; and (2) to not sell or deliver his 2026 crops at any undisclosed location absent AgQuest's written consent. (ECF No. 11-1 at PageID 105.) AgQuest also requests an order requiring Daniels to only receive payments from the sale of his 2026 crops that are made to both Daniels and AgQuest as joint payees. (Id.) AgQuest has failed to meet its burden to obtain this relief by way of a temporary restraining order.

### I. Likelihood of Success on the Merits

To demonstrate a strong likelihood of success on the merits, AgQuest must show that it is likely to succeed on its claim to the collateral. AgQuest must show more than a mere possibility of success but is not required to prove its case in full at this point. Ne. Ohio. Coal. for Homeless v. Husted, 696 F.3d 580, 591 (6th Cir. 2012) (citation omitted). "[I]t is ordinarily sufficient if the plaintiff has raised questions going to the merits so serious, substantial, difficult, and doubtful as to make them a fair ground for litigation and thus for more deliberate investigation." Id. (citation omitted).

AgQuest argues that it has a security interest in Daniels's crops, that Daniels has defaulted on his loan, and that AgQuest can therefore enforce its rights to the crops. Daniels argues that another creditor, First Community Bank, has first lien on all his crops and that the meager yield of his 2026 harvest means AgQuest does not have a "currently enforceable interest." (ECF No. 14 at PageID 122.) In reply, AgQuest points to a slew of questions that remain unanswered at this early stage of the litigation, i.e., whether a superior lien exists, the

amount secured by that lien, what proceeds Daniels has received, and whether identifiable proceeds remain. (ECF No. 15-1 at PageID 128.)

AgQuest has not shown a likelihood of success on the merits for this extraordinary relief. Take, for example, the list of unanswered questions raised by AgQuest. "Whether a superior lien exists, the amount secured by that lien, what proceeds were received, what payments were properly made from those proceeds, and whether identifiable proceeds remain," are all unknown at this stage. (Id.) Given these lingering questions, and the extraordinary relief request, AgQuest has failed to show that it is likely to succeed on the merits. This factor weighs against granting a temporary restraining order.

**II. Irreparable Harm**

Whether the movant can show irreparable harm is critical to the temporary restraining order analysis. Cf. EOG Res., Inc. v. Lucky Land Mgmt., LLC, 134 F.4th 868, 883 (6th Cir. 2025) ("Irreparable harm is [at] the core of the [temporary restraining order] . . . [and] while 'the extent of an injury may be balanced against other factors, the existence of an irreparable injury is mandatory." (quoting D.T. v. Sumner Cnty. Schs., 942 F.3d 324, 327 (6th Cir. 2019)). "'Irreparable' means 'not fully compensable by monetary damages.'" Id. (quoting Overstreet v. Lexington-Fayette Urb. Cnty. Gov't, 305 F.3d 566, 578 (6th Cir. 2002)). A harm "is not fully compensable by money damages if the nature of the [movant's] loss would make the damages difficult to calculate." Whobrey v. Tenet Healthcare Corp., No. 2:26-cv-02946-SHL-tmp, 2026 WL 2676559, at *10 (W.D. Tenn. Sep. 11, 2026) (quoting Certified Restoration Dry Cleaning Network, LLC v. Tenke Corp., 511 F.3d 535, 550 (6th Cir. 2007)).

AgQuest assures that its request for a temporary restraining order "is . . . not simply an assertion that [it] may ultimately have difficult collecting a money judgment." (ECF No. 11-1 at

PageID 100.) Instead, AgQuest claims that the threat of irreparable harm stems from the potential "loss or impairment of AgQuest's present property interest in specific collateral before final adjudication." This statement is in tension with AgQuest's requested relief, specifically, a requirement that proceeds from the crops are jointly payable so that the collateral is preserved while the parties' rights are litigated. So, on the one hand, AgQuest asserts that it faces irreparable harm based on losing its "present property interest," while on the other, AgQuest seeks an order that would grant it the right to receive checks from the buyers of Daniels's crops.

The relief requested shows that AgQuest's interest is in the monetary value of the crops, not the crops themselves. This, in turn, indicates that AgQuest's potential harm would be "fully compensable by monetary damages." EOG Res., 134 F.4th at 883 (citation omitted). The authorities AgQuest points to confirm this conclusion.

AgQuest argues that the "threatened concealment or dissipation of assets in which a plaintiff has a cognizable interest can support a finding of irreparable injury." (ECF No. 11-1 at PageID 100 (citing McGirr v. Rehme, 891 F.3d 603, 613–14 (6th Cir. 2018)).) But concealment or dissipation of assets constitutes irreparable harm only when those assets were "likely obtained through fraud." See McGirr, 891 F.3d at 613; Huntington Nat. Bank v. Guishard, Wilburn & Shorts, LLC, No. 2:12–CV–1035, 2012 WL 5902916, at *9 (S.D. Ohio Nov. 26, 2012) (citation omitted) (same). And the harm AgQuest contends is imminent, that Daniels will sell crops and make it more difficult for AgQuest to obtain repayment of the two loans, is simply not the type of conduct that poses a risk of irreparable harm. See EOG Res., 134 F.4th at 884–85 (listing the following examples of harms not fully compensable by monetary damages: copyright infringement, damage to reputation, loss of a grandfathered tax status, and a defendant intentionally becoming insolvent to avoid collection on a judgment).

AgQuest also argues that, in a similar case out of Pennsylvania, a court ordered a preliminary injunction given "the risk that crop proceeds would be dissipated absent an injunction, and ordered proceeds from crops already sold placed in escrow." (Id. (citing Green Stripe, Inc. v. Berny's Internacionale, 159 F. Supp. 2d 51, 57 (E.D. Pa. June 15, 2001)).) That case is distinguishable for several reasons. Perhaps most critically is that the finding of irreparable harm in that case related to a threat to the plaintiff's "reputation and good will in the produce marketing industry." Green Stripe, 159 F. Supp. 2d at 57. Additionally, the court relied on case law where an injunction was issued to prevent crops from being sold or transferred because of the crops' perishable nature or unique attributes. Id. Here, AgQuest does not allege reputational harm or a need to access the crops. Instead, AgQuest seeks to ensure that it will have its loans repaid. This is paradigmatic of the class of harms fully compensable by monetary damages and inappropriate for a temporary restraining order.

## CONCLUSION

Because the first two factors weigh against granting the restraining order, it is unnecessary to proceed to the final two. See Hydrafacial LLC v. Aesthetic Mgmt. Partners, LLC, No. 2:24-cv-02480-SHL-tmp, 2026 WL 2664304, at *3 (W.D. Tenn. Sep. 9, 2026) ("[A] movant cannot be granted a [temporary restraining order] unless it establishes both of the first two factors, i.e., likelihood of success on the merits and irreparable harm.") (citation omitted). Therefore, AgQuest's Motion for Temporary Restraining Order is **DENIED**. AgQuest is **DIRECTED** to indicate, on the docket, whether it seeks a Preliminary Injunction hearing by the close of business on October 7, 2026.

**IT IS SO ORDERED**, this 2nd day of October, 2026.

s/ Sheryl H. Lipman
SHERYL H. LIPMAN
CHIEF UNITED STATES DISTRICT JUDGE